**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| RLED, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 2:07-cv-0012-CWH |
| | ) | |
| vs. | ) | |
| | ) | |
| John Douglas Allison, Individually and d/b/a | ) | |
| Fresh 1 Distributions; Fresh 1 Distributors, | ) | |
| LLC; Stuart R. Miller; and Three River | ) | |
| Distribution, LLC, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on the plaintiff RLED, LLC's motion for partial summary judgment on the contract claim.

**I.     Plaintiff's Allegations and Procedural History**

RLED, LLC ("RLED") is a California company that manufactures and distributes Roaring Lion Energy Drink ("Roaring Lion") throughout the United States and other countries. Roaring Lion is a non-alcoholic beverage that contains caffeine, vitamins, and other ingredients designed to provide an energy boost and combat mental and physical fatigue. Roaring Lion products are sold in bars, nightclubs, restaurants, hotels, grocery stores, convenience stores, and other establishments that sell beverage products. Roaring Lion is sold in ready for consumption cans and bottles and is also sold in pre-mix concentrated syrup packaged in one-gallon and three-gallon "Bag-in-a Box" containers. RLED and several other energy drink companies compete against the market leader, Red Bull, for market share in the State of South Carolina and elsewhere.

On June 22, 2005, defendant John Douglas Allison, individually and doing business as Fresh 1 Distributors (collectively referred to as "Allison")[1] entered into an Exclusive Distribution Agreement (the "distribution agreement") with RLED. The initial term of Allison's distribution agreement with RLED was for a five-year period lasting through December 31, 2009. The parties limited the scope of the distribution agreement to the State of South Carolina. Under the distribution agreement, Allison was appointed as the exclusive distributor of RLED energy drinks in South Carolina during the term of the agreement.[2] In June 2005, Allison signed the distribution agreement. In July of 2005, Allison moved to South Carolina and became RLED's exclusive distributor in South Carolina. On September 21, 2006, Allison sent RLED an email stating his 120-day notice of intent to terminate his distributor agreement with RLED, in accordance with Sections 2,[3] 4(E),[4] and 9[5] of the distribution agreement, effective January 30,

---

[1] Doug Allison subsequently formed Fresh 1 Distributors, LLC as a South Carolina limited liability company on or around March 21, 2006. He is its sole member and began conducting his distribution business under that entity.

[2] As a distributor, Allison was responsible for the day to day operations of the accounts. He promoted and sold RLED and delivered RLED to retail outlets, such as bars and restaurants, and managed customer accounts.

[3] Paragraph 2 of the distribution agreement states:
The term of this Agreement shall be for the period from execution of this Agreement until December 31, 2009, subject to the renewal terms as set forth herein. This Agreement shall automatically renew and be extended from year to year, from and after December 31, 2009 provided however that either party hereto may terminate this Agreement by giving the other party a minimum of 120 days written notice on or after September 1, 2009.

[4] Paragraph 4(E) of the distribution agreement states:
In the event of and upon termination of this Agreement at any time by either party, with or without cause, under any circumstances whatsoever, RLED at its option may cancel all unfilled orders with DISTRIBUTOR for the Products as of the date on which the

2007.

On January 3, 2007, RLED instituted an action against Allison for breach of contract, violation of the Lanham Act, violation of the South Carolina Unfair Trade Practices Act, and other causes of action. On November 29, 2007, RLED moved for partial summary judgment concerning the ambiguity of Paragraph 2 of the distribution agreement. On December 17, 2007, Allison responded in opposition to RLED's motion for partial summary judgment. On January 30, 2008, the Court heard the pending motion and took the motion for partial summary judgment under advisement.

## II.     California Law Governing Contract Interpretation

The distribution agreement in this case states, "[t]his Agreement shall be governed by and construed in accordance with the laws in the State of California." "Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless." City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 80 Cal.Rptr.2d 329, 350 (Cal. Ct. App. 1st Dist. 1998). Part of a court's initial interpretation of a contract is "to determine whether the term [of the contract] is ambiguous, i.e., it is 'reasonably susceptible' to either of the meanings urged by the parties." Curry v. Moody, 40 Cal.App.4th 1547, 1552 (1995). "A contract is ambiguous

---

termination notice is given.

[5] Paragraph 9 of the distribution agreement states:
Prior to the termination of this Agreement by DISTRIBUTOR, for any reason, DISTRIBUTOR shall give RLED a minimum of 120 days notice of its intent to terminate so that RLED may secure the orderly transition of accounts using the Product to itself or a new distributor. During the notice period aforesaid DISTRIBUTOR and RLED shall adhere to all the terms of this Agreement including sections 1B and 5F.

when, on its face, it is capable of two different reasonable interpretations." United Teachers of Oakland v. Oakland Unified Sch. Dist., 75 Cal.App.3d 322, 330 (1977). "When the terms or provisions of an instrument are clear and certain, extrinsic evidence to explain or interpret them is not admissible. But if the terms or provisions are ambiguous or uncertain extrinsic evidence may be admissible depending . . . on the kind of ambiguity involved." In re Black's Estate, 211 Cal.App.2d 75, 84 (1962) (citations omitted).

### III.     Conclusion

The plaintiff moves for partial summary judgment concerning the ambiguity of Paragraph 2 of the distribution agreement. It contends that the same is not capable of more than one meaning and is, therefore, enforceable as written. The defendant, on the other hand, takes the position that the term of the distribution agreement in Paragraph 2 is ambiguous and gives the defendant the right to terminate at any time for any or no reason upon 120-days notice. The Court agrees with the plaintiff. The distribution agreement is not ambiguous as to termination, and Paragraph 2 is enforceable as written.

**AND IT IS SO ORDERED**.

_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

February 6, 2008
Charleston, South Carolina